**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

ABDULLAHI SADE AFYARE,

Plaintiff,

v.

HEATHER WEYKER, *in her individual capacity as a St. Paul Police Officer*; JOHN BANDEMER, *in his individual and official capacities as a St. Paul Police Sergeant*; JOHN DOES 3-4, *in their individual and official capacities as supervisory members of the St. Paul Police Department*; *and* THE CITY OF ST. PAUL,

Defendants.

Case No. 16cv1758 (JNE/TNL)
ORDER

## I. INTRODUCTION

Plaintiff Abdullahi Sade Afyare alleges violations of his constitutional rights in an investigation that led to his indictment by a federal grand jury and subsequent arrest. He sues Defendants Heather Weyker, a police officer for the St. Paul Police Department in Minnesota; John Bandemer, a St. Paul Police Department sergeant who is alleged to have been Weyker's supervisor; John Does 3-4, who are allegedly supervisory St. Paul police officers; and the City of St. Paul ("St. Paul"). Weyker and Bandemer move to dismiss Afyare's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on absolute and qualified immunity grounds. Dkt. No. 35. St. Paul moves on behalf of the City of St. Paul and John Does 3-4 for judgment on the pleadings pursuant to Rule 12(c). Dkt. No. 44.

The investigation at the core of Afyare's civil complaint targeted a suspected venture involving the sex-trafficking of minor girls across Minnesota, Tennessee, and Ohio. The investigation resulted in the criminal indictment of thirty people, mostly Somali, in the Middle

District of Tennessee in 2010-2011 ("Tennessee Case"). Afyare alleges that Weyker and Bandemer fabricated evidence about him and others throughout the investigation, resulting in a tainted indictment that was further corrupted by Weyker's continuing deception, and causing his arrest and detention without probable cause.

Nineteen of Afyare's co-defendants in the Tennessee Case bring separate suits similarly alleging constitutional violations, and a twenty-first person brings another related civil suit. The parties agreed to coordinated briefing on the Defendants' motions. The Court assumes familiarity with its fuller opinion in one of the related cases, *Osman v. Weyker, et al.*, No. 16cv908 ("Osman Opinion") (filed simultaneously herewith), and will not repeat that opinion's discussion verbatim here, given the overlap in allegations and arguments. Afyare, coordinating with the other plaintiffs represented by the same counsel, opposed the motions. *See* GBBS Pls.' Opp. to St. Paul Mot., Dkt. No. 49; GBBS Pls.' Opp. to DOJ Mot. to Dismiss, Dkt. No. 52.

The Court held a hearing on Defendants' motions on May 3, 2017, and now grants both motions.[1]

## II. APPLICABLE STANDARDS

A motion to dismiss or a motion for judgment on the pleadings is appropriately granted "only when there is no dispute as to any material facts and the moving party is entitled to judgment as a [m]atter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation omitted). To survive a Rule 12 motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Haney v.*

[1] The United States also filed a Motion to Substitute and Dismiss, which was mooted by stipulation as recognized by the April 12, 2017 Order Permitting the GBBS Plaintiffs to Amend Complaints. Dkt. No. 59. Pursuant to that order, Afyare filed an Amended Complaint [Dkt. No. 60] ("AC"), which is thus the operative complaint subject to these Rule 12 motions.

*Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016), *as amended* (Dec. 27, 2016). *See also* Osman Op. 3-4.

## III. ALLEGATIONS

Most of the allegations are similar to those alleged by Osman and summarized and analyzed in the Court's order in that case. *See, e.g.*, Osman Op. 4-8. The Court briefly recounts some allegations in Afyare's Amended Complaint and some facts gleaned from the Tennessee Case record.[2]

In April 2009, Afyare went to a party with some individuals who in time became his co-defendants in the Tennessee Case. AC ¶ 17. He met Jane Doe Two there for the first time. *Id.* A few days later, he and his friends, as well as Jane Doe Two, took a road trip to Nashville, Tennessee. AC ¶ 18. Soon after they arrived in Nashville, they were arrested, and he was charged with contributing to the delinquency of a minor (Jane Doe Two). AC ¶¶ 20-23.

On November 8, 2010, Afyare was arrested on a First Superseding Indictment ("FSI"), dated November 3, 2010. *See* AC ¶¶ 28, 34. He was taken to an immigration detention center, where Weyker began to question him "and threatened that if he did not admit to her trumped up tale of sex trafficking and implicate others, he would go to prison for a long time." AC ¶¶ 28-29. Afyare "refused to falsely admit to things he did not do nor falsely implicate others." *Id.* That same day, he was brought before a magistrate judge for a detention hearing. AC ¶ 30. The judge ordered him released on conditions, but the government appealed, and the district court in Tennessee stayed the release order pending the appeal, so Afyare remained in custody. AC ¶ 30. Eventually the appeal was decided, and he was released on conditions. AC ¶ 52.

[2] The Court may take judicial notice of public documents in the Tennessee Case record. *Greenman*, 787 F.3d at 887.

The indictment charged Afyare in seven counts. *See* FSI, *United States v. Afyare*, No. 3:10cr260, Dkt. No. 36 (M.D. Tenn. Nov. 3, 2010). Two counts alleged participation in a sex-trafficking conspiracy in violation of 18 U.S.C. § 1591(a) (Counts 1 and 2). Two counts, Counts 3 and 4, alleged obstruction of justice. Counts 12 and 13 alleged, from December 2006 through April 2009, recruitment and attempted recruitment of a minor (Jane Doe Two) to engage in sex trafficking. Finally, Count 18 alleged that from 2007 through September 2010, Afyare conspired to commit credit card fraud. *E.g.*, FSI ¶¶ 117, 119, 128, 130-32.

In early 2012, as the parties in the Tennessee Case prepared for trial to begin in March, the district court granted a motion to sever some of the counts, including Counts 15 and 18, for later trial. *United States v. Afyare*, No. 3:10cr260, Dkt. No. 1395 (M.D. Tenn. Feb. 16, 2012). In addition, Afyare and some other defendants elected to be severed from the defendants who were preparing for trial on sex-trafficking-related charges. *United States v. Adan*, 913 F. Supp. 2d 555, 559 (M.D. Tenn. 2012).

In the criminal trial that took place in Spring 2012, the jury acquitted six defendants fully, and acquitted three defendants on some counts but convicted them on other counts. *See* AC ¶ 56. The district court then granted Federal Rule of Criminal Procedure 29 motions for judgments of acquittal by the three convicted defendants, on the basis of a variance. *See* AC ¶ 56; *Adan*, 913 F. Supp. 2d at 579.

After that trial, in August 2012, a Third Superseding Indictment was filed. It charged Afyare with the same crimes, including credit-card fraud conspiracy, and added some charges. *See United States v. Afyare*, No. 3:10cr260, Dkt. No. 2701 (M.D. Tenn. Aug. 22, 2012).

Afyare was released from pretrial detention after the Sixth Circuit on March 2, 2016, decided the appeal of the district court's order granting the Rule 29 motions, and after the

government subsequently moved to dismiss all charges against all remaining defendants. *See* AC ¶¶ 58-59; *see also United States v. Fahra*, 643 Fed. Appx. 480 (6th Cir. Mar. 2, 2016).

Like Osman, Afyare alleges that the charges of a wide-ranging sex-trafficking conspiracy were baseless and that Weyker fabricated "the overwhelming majority of material evidence supporting Afyare's indictment for sex trafficking," AC ¶ 43; that Weyker manipulated and coerced Jane Doe witnesses, including Jane Doe Two, into lying, *e.g.*, AC ¶¶ 41, 47, 60; and that indications of Weyker's fabrication included her rough notes, AC ¶ 48, questions surrounding Jane Doe Two's age, AC ¶¶ 21, 49, 50, questions surrounding Jane Doe Two's April 2009 trip to Nashville, AC ¶¶ 22, 42, 48, and the results of the Spring 2012 trial, AC ¶ 56. Also like Osman, Afyare's complaint repeatedly cites to remarks about Weyker and the case by the district and appellate courts in the Tennessee Case. AC ¶¶ 42, 44 n.1, 50, 63-64.

## IV. SUMMARY OF ARGUMENTS

A summary of the parties' arguments is included in Section IV of the Court's simultaneously filed opinion in *Yusuf v. Weyker, et al.*, No. 16cv1012. Afyare is represented by the same counsel as Yusuf.

## V. LEGAL ANALYSIS

As explained fully in the Osman Opinion, pursuant to *Manuel v. City of Joliet*, 137 S. Ct. 911 (Mar. 21, 2017), Afyare's claims sound, if at all, in the Fourth Amendment, not the Fifth or Fourteenth. *See* Osman Op. 11-13; *see also id.* at 17-22. His complaint is that "[b]ut for the false testimony and other erroneous evidence manufactured by Weyker and Bandemer, no probable cause existed to detain or otherwise restrict Afyare's liberty." AC ¶ 1; *see also* AC ¶ 49. In other words, he complains "that a form of legal process resulted in pretrial detention unsupported by probable cause." *Manuel*, 137 S. Ct. at 919. So "the right allegedly infringed

lies in the Fourth Amendment." *Id.* A "constitutional division of labor" applies to claims similar to Afyare's. *Id.* at 920 n.8 (referring to *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *Albright v. Oliver*, 510 U.S. 266 (1994)). Thus, because he challenges his pretrial detention, his claim is under the Fourth Amendment. His claims for substantive due process violations under the Fifth or Fourteenth Amendments therefore fail. *See Manuel*, 137 S. Ct. at 919-20; *Albright*, 510 U.S. at 271 (plurality opinion).[3]

Under the Fourth Amendment analysis, the Court must decide whether Afyare plausibly alleges that the Defendants violated his right to be free from unreasonable seizure by arresting and detaining him without arguable probable cause, based on fabricated evidence.[4]

To evaluate whether a person's Fourth Amendment right has been violated by an arrest pursuant to a warrant that lacked probable cause, the court applies the analysis set out in *Franks v. Delaware*, 438 U.S. 154 (1978). *See Hawkins v. Gage Cty.*, 759 F.3d 951, 958-59 (8th Cir. 2014); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101, 105 (1st Cir. 2013). Thus, the court considers whether there were deliberately or recklessly false statements made in support of a finding of probable cause and whether those statements were necessary to the finding of probable cause. *See Franks*, 438 U.S. at 156; *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014). The court also considers whether material information was omitted with the intent to mislead or with reckless disregard as to whether the omission was misleading. *See Williams*, 772

[3] As explained in a footnote in the Court's simultaneously filed order in *Yusuf v. Weyker, et al.*, No. 16cv1012, his attempt to distinguish *Albright* in the opposition papers, which were filed without the benefit of the *Manuel* decision, is not persuasive in light of the *Manuel* Court's clear interpretation of *Albright*. *See Manuel*, 137 S. Ct. at 918.

[4] Because the Court finds that only the Fourth Amendment, and not substantive due process, is applicable; because a Fourth Amendment claim in this case does not present a new context for a *Bivens* action; and because § 1983 and *Bivens* claims are analyzed similarly, the Court does not reach the question of whether Afyare's claim should be brought under § 1983 or *Bivens*. *See* Osman Op. 13-17.

F.3d at 1312; *Hawkins*, 759 F.3d at 959. If, setting aside the false statements (or adding in the omitted information), there was no probable cause to arrest, then the arrest violated the Fourth Amendment. *See Williams*, 772 F.3d at 1312-13; *Hawkins*, 759 F.3d at 958-59; *Hernandez-Cuevas*, 723 F.3d at 105. Probable cause "exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015) (citation omitted).

Where a plaintiff alleges that she was arrested without probable cause and the defendant asserts the qualified immunity defense, courts ask whether there was "*arguable* probable cause to arrest." *Stewart v. Wagner*, 836 F.3d 978, 984 (8th Cir. 2016) (citing *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)) (applying this standard to a Fourth Amendment claim for detention based on allegedly false and incomplete information in a probable cause statement). "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *New*, 787 F.3d at 899. "It is clearly established that the Fourth Amendment requires a *truthful factual showing* sufficient to constitute probable cause before an arrest warrant can issue." *Peterson v. City of Plymouth*, 60 F.3d 469, 477 (8th Cir. 1995) (emphasis added) (citation omitted).

#### a. Analysis of Afyare's Claim Under the Fourth Amendment

In considering whether Afyare plausibly alleges a Fourth Amendment violation, the Court disregards mere conclusory statements, focuses on well-pleaded factual allegations, and applies its judicial experience and common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Court also properly considers the Tennessee Case court record in assessing the pleadings. *See, e.g.*, *Greenman*, 787 F.3d at 887.

Afyare's core allegations are very similar to Osman's, including the ample citations to comments by the Tennessee Case district court and a related appellate decision. In the Osman Opinion, the Court examines several orders and memoranda by the district court and two separate Sixth Circuit Court of Appeals opinions concerning the Tennessee Case, some of which both Osman and Afyare cite. *See* Osman Op. 25-33. For instance, like Osman, Afyare's allegations point to the jury's and the district court's acquittals[5] of the nine defendants who went to trial in Spring 2012. *See* AC ¶ 56. Like Osman, he cites to the district court's post-trial order on the Rule 29 motions. *See* AC ¶ 64 (citing *Adan*, 913 F. Supp. 2d 555, 589 n.10 (M.D. Tenn. 2012)). In Osman's case, the Court found that some of these statements by judicial officers are remarkable, and that taken all together along with other well-pleaded facts, they nudge Osman's Fourth Amendment claim as to Weyker over *Iqbal*'s plausibility line. The Court notes that none of these judicial statements refer even obliquely to Bandemer. The Court further found that the fact that Osman was also indicted on charges of obstruction of justice relating to the prosecution of the allegedly fabricated sex-trafficking-conspiracy case does not *per se* doom her Fourth Amendment claim. *See* Osman Op. 35-37. Afyare's case, however, is different.

Weyker and Bandemer argue that even if Afyare plausibly alleges that Weyker fabricated evidence material to the indictment for sex-trafficking-related charges, the fact that he was also indicted in non-trafficking-related charges defeats his Fourth Amendment claim. Weyker and Bandemer argue that Afyare fails to plausibly allege that there was not probable cause to arrest him on the other crimes for which he was charged. *See* DOJ Br. 65-68. They point out in their reply papers that he and the other plaintiffs represented by the same counsel fail to address this argument at all. DOJ Reply 31-32.

---

[5] The Court uses the word "acquittal" for consistency with the Tennessee Case opinions and the pleadings but has some reservations about it. *See* Osman Op. 23-25.

Afyare's complaint does not acknowledge that he was charged in the First Superseding Indictment in Count 18 with a crime unconnected to any alleged sex-trafficking, and as noted, his opposition papers did not respond to Weyker and Bandemer's argument that his Fourth Amendment claim fails in light of that count.[6] Afyare fails to plausibly allege—or even conclusorily state—that there was no probable cause to indict and arrest him in November 2010 on that count. The indictment included some specific allegations about him in support those counts. For example, Count 18 alleges that on August 15, 2009, he used a counterfeit credit card to make a purchase for several hundred dollars at a Walgreens and a counterfeit card to make another purchase for over $1000 at a Wal-Mart. FSI ¶¶ 130-31. Afyare does not allege that these allegations are false or that Weyker or Bandemer fabricated evidence to support the grand jury's indictments of him in Count 18. The grand jury's indictment of him in that count "conclusively determines the existence of probable cause" on that count, *Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) (citation omitted), at least absent any plausible allegations that the indictment on that count was tainted by fabrication of evidence.[7] Afyare's more general, conclusory allegations—*e.g.*, that he would not have been detained absent fabricated evidence, AC ¶¶ 1, 61—cannot overcome the hurdle posed by his indictment in Count 18. Finally, the Court cannot reasonably conclude from the results of the trial of other co-defendants on other counts, or the government's dismissal of charges after an adverse appellate decision affirming the grant of Rule 29 motions on the basis of a variance, that there was no probable cause to indict Afyare on any counts at all.

---

[6] He was also charged with obstruction of justice in two counts, which he again fails to acknowledge. The indictment included a specific allegation about him in support of these two counts, but analysis of those charges is unnecessary in light of Count 18.

[7] The Court further notes that at least one of his co-defendants pleaded guilty to the credit-card conspiracy charged in Count 18. *See United States v. Nur*, No. 3:10cr260, Dkt. No. 2870 (M.D. Tenn. Oct. 5, 2012).

Therefore, Afyare's complaint must fail. Even if there were no probable cause to arrest him based on the allegedly spurious sex-trafficking-conspiracy charges, there is no Fourth Amendment violation where there is probable cause to arrest "for the violation of some other law." *Greenman*, 787 F.3d at 889 (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (holding that there is no Fourth Amendment violation if there is probable cause to arrest based on any criminal offense, even if the officer's subjective reason for arresting was a different and unrelated offense); *Keil v. Triveline*, 661 F.3d 981, 986 (8th Cir. 2011). He therefore "has failed to 'make out a violation of a constitutional right' in the first instance." *Greenman*, 787 F.3d at 888; *see also Keil*, 661 F.3d at 986.

Defendants Weyker and Bandemer are entitled to qualified immunity. Afyare has failed to plausibly allege a constitutional violation. Moreover, as to Bandemer, Afyare has not pleaded adequate facts to support an inference that he directly fabricated evidence.

**b. Supervisory Liability**

Afyare also sues Bandemer and John Does 3-4 in their individual capacities as supervisors. He alleges that they were deliberately indifferent to or authorized Weyker's and Bandemer's alleged violations of his constitutional rights. *See* AC ¶ 65.

A supervisor sued in his or her individual capacity in a § 1983 or *Bivens* suit "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340 (citing *Livers*,

700 F.3d at 355). "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *Id.* The notice prong requires that "[t]o impose supervisory liability, other misconduct [allegedly giving the supervisor notice] must be very similar to the conduct giving rise to liability." *Id.* (quoting *Livers*, 700 F.3d at 356).

First, given the Court's conclusion that Afyare has not adequately alleged a constitutional violation by Weyker or Bandemer, the supervisory liability claims "automatically fail for lack of an underlying constitutional violation." *Mendoza v. U.S. Immig'n & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)).

Moreover, Afyare's complaint, which is very similar to Osman's complaint as to the supervisory liability allegations, likewise contains few allegations—and fewer well-pleaded facts—regarding supervisory liability. Like Osman, he alleges that Bandemer and the John Does had supervisory responsibility over Weyker, *see, e.g.*, AC ¶ 65; that the investigation was very important to the St. Paul Police Department vice unit, AC ¶ 41; and that "[b]y at least February 15, 2012, these [supervisory] defendants had actual knowledge" of Weyker's fabrications based on a February 2012 memorandum-order at Dkt. No. 1392 and other district court orders, *id.* ¶¶ 63-64, 66. Like Osman, Afyare cites *United States v. Mohamud*, No. 3:10cr260, 2013 WL 1935506, at *11 n. 6 (M.D. Tenn. May 9, 2013), and *United States v. Adan*, 913 F. Supp. 2d 555, 589 n.10 (M.D. Tenn. Dec. 19, 2012), in support of his supervisory liability notice allegations. AC ¶¶ 63-64.

As explained in the Osman Opinion, these allegations do not sufficiently plead supervisory liability based on notice. *See* Osman Op. 37-41. Nor do they establish a pattern of unconstitutional acts by Weyker. Ignoring conclusory or unsupported allegations, Afyare does

not allege any other similar acts by Weyker or Bandemer before the Tennessee Case investigation that could show a pattern about which Bandemer (as Weyker's supervisor) or the John Does (as Weyker's and/or Bandemer's supervisors) personally knew.

The allegations fail to state a claim for supervisory liability, and Bandemer and John Does 3-4 are entitled to qualified immunity as to these counts.

**c. Municipal Liability**

Afyare sues St. Paul as well as Bandemer and the John Does in their official capacities for municipal liability under *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead," a municipality is liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.*

A plaintiff therefore must show that there is an "official" policy or a "custom or usage with the force of law." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). A plaintiff must plead "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citation omitted). Absent allegations of an official policy that was the moving force behind the violation, "[m]isconduct among a municipality's employees must be 'continuing, widespread, [and] persistent' to establish such a custom." *Kelly*, 813 F.3d at 1075 (citation omitted). Also, "the municipality will not be liable unless policymaking officials exhibit '[d]eliberate indifference to or tacit authorization of such conduct . . . after notice to the officials of that misconduct." *Id.* at 1075-76 (citation omitted). The question is whether a "governmental policy or custom was the

‘moving force’ that led to the deprivation of [the plaintiff’s] constitutional rights.” *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002). Even if no individual employee is found liable, a municipality might be liable, but only where “the combined actions of multiple officials or employees may give rise to a constitutional violation.” *Id.*

Afyare does not adequately support his conclusory municipal liability allegations with well-pleaded facts. He does not allege with well-pleaded facts that Weyker or other St. Paul Police Department employees fabricated evidence in other investigations, nor that policymaking officials in the department were aware of any previous incidents of fabrication of evidence. He does not allege well-pleaded facts to support a theory that multiple St. Paul Police Department members—not even Weyker and Bandemer—combined to violate his rights. Nor does he allege facts that would demonstrate an official department *policy* that moved officers to fabricate evidence or coerce witnesses and mislead prosecutors and grand juries to secure indictments. He also does not plausibly allege any such *custom* because, among other reasons, he has not adequately alleged notice, as explained above. The supervisory defendants sued in their official capacities, and the City of St. Paul, are entitled to qualified immunity on these claims.

**VI. Conclusion**

Defendants are entitled to qualified immunity on all counts, because Afyare’s complaint fails to plausibly allege a violation of his constitutional rights. The Court grants the Defendants’ motions and dismisses with prejudice. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060-61 (8th Cir. 2013); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Heather Weyker and John Bandemer’s Motion to Dismiss [Dkt. No. 35] is GRANTED.

2. Defendant City of Saint Paul’s Motion for Judgment on the Pleadings [Dkt. No. 44] is GRANTED.

3. Plaintiff Abdullahi Sade Afyare’s Amended Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 9, 2017

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge